```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE         *   MDL Docket No. 2004
                                      4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS     *
                                      Case Nos.
LIABILITY LITIGATION              *   4:13-cv-125 (Roy)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Lynne Roy was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Roy brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Roy also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Her husband Eugene brought a loss of consortium claim. Mentor seeks summary judgment on the Roys' claims, contending that they are time-barred. For the reasons set forth below, Mentor's summary judgment motion (ECF No. 44 in 4:13-cv-125) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Lynne Roy suffered from stress urinary incontinence, and she sought treatment from Dr. Ramesh Unni. Dr. Unni implanted Mrs. Roy with ObTape on November 22, 2004. Less than a year later, Mrs. Roy developed malodorous vaginal discharge. After seeing at least two doctors about her symptoms, Mrs. Roy visited Dr. Sandra Culbertson in July 2007. Dr. Culbertson examined Mrs. Roy and told Mrs. Roy that her ObTape had rubbed a hole in her vaginal wall, was causing the discharge, and needed to be removed. Dr. Culbertson removed Mrs. Roy's ObTape on September 10, 2007 and told Mrs. Roy that she had removed infected mesh. Mrs. Roy's vaginal discharge symptoms cleared up after the excision surgery.

The Roys are Indiana residents, and Mrs. Roy's ObTape-related treatment took place in Indiana. Mrs. Roy asserts

claims for negligence, strict liability – manufacturing defect; strict liability – failure to warn; strict liability – defective product; breach of implied warranty; breach of express warranty; fraudulent concealment; constructive fraud; discovery rule, tolling, and fraudulent concealment; negligent misrepresentation; negligent infliction of emotional distress; violation of consumer protection laws; gross negligence; unjust enrichment; and punitive damages.  Mr. Roy asserts a loss of consortium claim.  Mrs. Roy does not dispute that Mentor is entitled to summary judgment on her unjust enrichment claim, so summary judgment is granted as to that claim.

## DISCUSSION

The Roys filed their action on April 4, 2013 by filing a short form complaint in *In Re: Coloplast Corp. Pelvic Support System Products Liability Litigation*, MDL No.2387.  The Roys stated that the proper venue for their action is the U.S. District Court for the Northern District of Indiana.  Compl. ¶ 5, ECF No. 1 in 4:13-cv-125.  The Judicial Panel on Multidistrict Litigation transferred the action to this Court for pretrial proceedings.  The parties agree that Indiana law applies because it is the law of the state where venue would be proper had the action not been filed in a multidistrict litigation proceeding.

Indiana has a two-year statute of limitations for product liability claims. Ind. Code § 34-20-3-1(b)(1). This statute of limitations applies to all of the Roys' claims except Mrs. Roy's warranty claims because Indiana's Product Liability Act governs all actions brought by a consumer against a manufacturer "for physical harm caused by a product[,] regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. Therefore, the two-year statute of limitations applies to the Roys' claims for negligence, strict liability – manufacturing defect; strict liability – failure to warn; strict liability – defective product; fraudulent concealment; constructive fraud; negligent misrepresentation; negligent infliction of emotional distress; violation of consumer protection laws; gross negligence; and loss of consortium.

Under Indiana's discovery rule, the Indiana statute of limitations "begins to run from the date that the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002) (applying Indiana law) (quoting *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001)); *accord Evenson v. Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 703 (7th Cir. 1990) (applying Indiana law). In *Mullens*, for example, the

4

Indiana Supreme Court concluded that the statute of limitations did not begin to run until the plaintiff knew there was "a 'reasonable possibility, if not a probability' that an injury was caused by an act or product."  *Mullens*, 744 N.E.2d at 411 (quoting *Van Dusen v. Stotts*, 712 N.E.2d 491, 499 (Ind. 1999)). The *Mullens* Court noted that once the plaintiff suspected that her symptoms were connected to the defendant's chemicals that she was exposed to at work, she undertook a diligent investigation to determine the cause of her symptoms.  *Id.*  That diligent investigation led the plaintiff to a doctor who found that the plaintiff's symptoms were caused by the defendant's chemicals, and the statute of limitations began running when the doctor connected the symptoms to the chemicals.  *Id.*

 Here, Mrs. Roy contends that she did not learn of a connection between ObTape and her injuries until 2011 when she saw a television commercial regarding mesh complications.  But Mrs. Roy knew or should have known that she suffered some injuries caused by ObTape well before then.  In July 2007, Mrs. Roy's doctor told Mrs. Roy that the ObTape had rubbed a hole in her vaginal wall, was causing the discharge, and needed to be removed.  And in September 2007, Mrs. Roy's doctor removed the ObTape and told Mrs. Roy that she had removed infected mesh from Mrs. Roy's body.  Therefore, Mrs. Roy knew of, strongly suspected, or had enough information to know of a connection

between ObTape and at least some of her injuries by September 2007. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. The statute of limitations for the Roys' product liability claims therefore accrued in September 2007. They did not file their action until more than five years later, so their product liability claims, including Mr. Roy's loss of consortium claim, are barred.

The Roys contend that it is not enough that they made a connection between ObTape and some of Mrs. Roy's injuries. Rather, they appear to argue that they must have been on notice that a *defect* in ObTape caused Mrs. Roy's injuries. The Roys did not point to any Indiana authority holding that a plaintiff must be on notice that her injuries were caused by a product *defect*. Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product. *See Mullens*, 744 N.E.2d at 411 (finding that statute of limitations did not begin to run until the plaintiff knew that there was a reasonable probability that her injuries were caused by the defendant's product).

The Roys nonetheless contend that *Evenson*, a Seventh Circuit case applying Indiana law, supports denial of summary judgment on their negligence and strict liability claims. The Court disagrees. In *Evenson*, a wood treatment worker was exposed to a chemical at his job, and he developed several conditions that required medical treatment. In 1985, the worker became concerned that the chemical caused his symptoms, but at the time, his doctors were unable to identify the cause of the worker's problems. Therefore, the Seventh Circuit concluded that there was not sufficient evidence that the worker "had or should have discovered some evidence" by 1985 "that there was a reasonable possibility that his [chemical] exposure was the cause of his injuries." *Evenson*, 899 F.2d 701 at 705. Rather, the statute of limitations did not begin to run until 1987, when a doctor connected the worker's symptoms to the chemical. Nothing in *Evenson* required the worker to be on notice of a *defect* in the chemical. Rather, the worker's cause of action accrued when his doctor told him that there was a connection between the chemical and his injuries. *Id.*

Here, the Roys knew or should have known of a connection between ObTape and Mrs. Roy's symptoms by September 2007, when Mrs. Roy's doctor removed the ObTape after discovering that the ObTape had rubbed a hole in Mrs. Roy's vaginal wall. The Roys' product liability claims accrued in 2007, and they did not file

7

their action within two years. Their product liability claims are therefore time-barred. Mrs. Roy's warranty claims are likewise time-barred.[1]

The Roys contend that even if the discovery rule does not save their claims, the statute of limitations should be tolled due to fraudulent concealment. "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." Ind. Code § 34-11-5-1. "The law narrowly defines concealment, and generally the concealment must be active and intentional." *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1072 (Ind. Ct. App. 2003). "[A] plaintiff must show that the wrongdoer was not simply silent but committed affirmative acts designed to conceal the cause of action." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1372 (7th Cir.1995) (applying

---

[1] Indiana has a four-year statute of limitations for breach of contract claims. Ind. Code § 26-1-2-725(1). A breach of warranty claim "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ind. Code § 26-1-2-725(2). "A breach of warranty occurs when tender of delivery is made." *Id.* Therefore, Mrs. Roy's warranty claims accrued when her ObTape was implanted in November 2004, and she did not bring her warranty claims within four years of that date.
As the Court previously explained, the discovery rule does not apply to contract-based claims under Indiana's Uniform Commercial Code. *Riley v. Mentor Corp.*, No. 4:11-CV-5075, 2013 WL 592409, at *3 (M.D. Ga. Feb. 14, 2013). Moreover, even if the product liability discovery rule did apply, Mrs. Roy's warranty claims would still be time-barred because she did not bring them within four years after learning of a connection between ObTape and her injuries.

Indiana law). "The affirmative acts of concealment must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation." *Olcott Int'l*, 793 N.E .2d at 1072 (quoting *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987)). "There must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry." *Id.* (quoting *Ludwig*, 510 N.E. at 697). "Mere lack of knowledge of a cause of action is not enough to constitute concealment and toll the running of the statute." *Id.* (quoting *Ludwig*, 510 N.E. at 697). "A plaintiff bears the burden of proving that a statute of limitations should be tolled, which includes demonstrating the use of reasonable care and diligence to detect the alleged cause of action." *Id.; accord Horn*, 50 F.3d at 1372 (noting that a plaintiff "must demonstrate that he exercised reasonable care and due diligence to discover the fraud").

Here, the Roys essentially argue that because Mentor sold ObTape to Mrs. Roy's doctor and continued selling it until 2006 without disclosing certain complication rates that Mentor had allegedly discovered, the statute of limitations should be tolled due to fraudulent concealment. The Roys did not, however, point to any evidence that Mentor took affirmative acts to prevent the Roys from knowing of a potential connection

between ObTape and Mrs. Roy's injuries. And, there is no evidence that the Roys exercised reasonable diligence to investigate their potential claims even though they knew (or had enough information to know) there was a connection between Mrs. Roy's injuries and the ObTape. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations.

## CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 44 in 4:13-cv-125) is granted.

IT IS SO ORDERED, this 13th day of April, 2016.

                                            s/Clay D. Land
                                            CLAY D. LAND
                                            CHIEF U.S. DISTRICT COURT JUDGE
                                            MIDDLE DISTRICT OF GEORGIA